EX PARTE EMILIANO RODRÍGUEZ REYES, peticionario.

Núm. 119.—*Sometido:* Julio 24, 1939.   *Resuelto:* Julio 29, 1939.

*Santos P. Amadeo, Ciro Malatrasi, Jr., Antonio J. Amadeo, Noel González Reichard* y *Pascual Semidey,* abogados del peticionario; *R. A. Gómez, Fiscal,* abogado de El Pueblo.

EL JUEZ PRESIDENTE SEÑOR DEL TORO emitió la opinión del tribunal.

Por medio de su abogado Santos P. Amadeo, Emiliano Rodríguez Reyes solicitó un auto de hábeas corpus dirigido a Andrés A. Lugo, Alcaide de la Cárcel del Distrito de San Juan, que lo retenía bajo su custodia, y pidió que una vez

investigado su caso, lo exonerara de los efectos de la senten-
cia condenatoria dictada contra él sin jurisdicción por la Corte
Municipal de San Juan en marzo 23, 1938.

El auto fué expedido celebrándose la vista el 24 de julio
actual. El fiscal se allanó a la solicitud. Los hechos, tales
como en ésta se alegan, quedaron comprobados. Son así:

"1.—Que el día 20 de marzo de 1938 como a las 8 de la mañana
el peticionario fué arrestado por la detective de San Juan por unos
supuestos delitos de escalamiento en segundo grado.

"2.—Que el peticionario fué encarcelado en el Cuartel de la
Policía de Santurce y estuvo allí hasta el 23 de marzo de 1938.

"3.—Que el día 23 de marzo de 1938 la Detective de San Juan
denunció ante la Hon. Corte Municipal de San Juan, Sec. III, al
peticionario acusándole de seis delitos de escalamiento en segundo
grado.

"4.—Que en el mismo acto de la acusación el peticionario se
declaró culpable de dichos delitos.

"5.—Que vista la confesión del acusado en Corte abierta, la
Corte Municipal de San Juan inmediatamente después y en el mismo
acto declaró culpable al peticionario de seis delitos de escalamiento
en segundo grado condenándole a sufrir la pena de 3 años de cárcel.

"6.—Que en virtud de dicha sentencia y habiendo mediado el
correspondiente mandamiento, el peticionario fué encarcelado en la
Cárcel de Distrito de San Juan bajo la custodia del Sr. Andrés A.
Lugo, Alcaide de dicha institución.

"7.—Que en ningún momento desde su arresto hasta después de
su encarcelación, el peticionario tuvo la asistencia de un abogado
defensor y la Corte en ningún momento le ofreció ni le nombró de-
fensor alguno al peticionario ni le instruyó en cuanto al derecho que
tenía a estar representado por un abogado, y en caso de no poder
pagar los servicios de un abogado, a tener los servicios de un abo-
gado de oficio nombrado por la Corte.

"8.—Que el peticionario cuando fué sentenciado tenía 17 años
de edad, sabía leer y escribir y no tenía antecedentes penales de
ninguna especie."

Repetidamente ha resuelto este tribunal en estos últimos
meses siguiendo la jurisprudencia sentada por la Corte
Suprema de los Estados Unidos en el caso de *John A. John-
son, Petitioner* v. *Fred. C. Zerbst, Warden*, 304 U. S. 458,

que "Cuando no se instruye a un acusado que comparece ante la corte *a quo* sin abogado en cuanto a su derecho constitucional a estar representado por letrado, se deja de proveerle defensa y nada indica que él renunciara a ese derecho competente e inteligentemente, dicha corte deja de tener jurisdicción para seguir el proceso hasta convicción y sentencia y, de ser encarcelado a virtud de tal sentencia, puede obtener su libertad mediante hábeas corpus." *Ex parte Hernández Laureano,* 54 D.P.R. 416.

La única diferencia entre este caso y los decididos por el tribunal estriba en que en dichos casos se trataba de sentencias dictadas por cortes de distrito y aquí las sentencias dictadas contra el peticionario lo fueron por una corte municipal.

Hemos visto que eso no obstante el fiscal se allanó, haciendo la salvedad de que lo hacía por tratarse de un delito calificado de menos grave pero revestido de características tales que lo distinguían necesariamente de pequeñas ofensas para las cuales no fuera tal vez necesario el auxilio de abogado. Llamó la atención de la corte hacia el artículo 324 del Código de Enjuiciamiento Criminal, ed. 1935, que copiado con la nota que le sigue, lee así:

"Artículo 324.—En todos los casos de convicción por delito grave (*felony*), el tribunal que sentencie a cualquier persona convicta, debe agregar a la sentencia de prisión la prescripción de que será con trabajos forzados.

"Nota.—La sección 3 de la ley de 8 de marzo de 1906, pág. 66, dice como sigue:

" 'Sección 3.—Siempre que una persona fuere convicta de un delito menos grave (*misdemeanor*), y fuere sentenciada a cárcel en una cárcel de distrito por un período que exceda de noventa días, la corte podrá, a su arbitrio, disponer que se le ponga a trabajar en obras públicas durante el período de su encarcelación.' "

Citó también el fiscal una decisión reciente que arroja luz sobre el problema a resolver. Nos referimos a la de la Corte de los Estados Unidos de Apelaciones para el Distrito de Columbia en el caso de *Sanders* v. *Allen, et al.,* 100 F. (2d) 717.

Dicho caso se vió ante los Jueces Groner, Juez Presidente, y Miller y Vinson, Jueces Asociados, y la opinión se emitió *per curiam*. En lo que consideramos pertinente, dice:

"La presente es una apelación de una orden declarando sin lugar una petición de hábeas corpus de la apelante. Allá para julio de 1938 la apelante (peticionaria) y un amigo fueron arrestados por hallarse en estado de embriaguez en la calle, cerca de un restaurante. La peticionaria fué juzgada por una corte de policía (*police court*) y se le impuso una multa de $100, y no habiéndola pagado, fué enviada a la cárcel en tanto pagase dicha multa o, en su defecto, a 60 días. Después de varios días de estar detenida, se la transfirió a la casa de trabajo de distrito, en Occoquan, distante como 20 millas de la ciudad de Washington, donde se encontraba cuando radicó su petición.

"Alega en su petición que cuando fué arrestada y juzgada no estaba ebria, sino sufriendo los efectos de una droga suministrádale sin su conocimiento, y que en ningún momento estuvo mentalmente capacitada para entender la naturaleza de la acusación que se le hacía o para defenderse. Contiende que en su juicio tenía derecho, bajo las disposiciones de la Quinta y Sexta Enmiendas a la Constitución, U.S.C.A. Const. Amends. 5, 6, a estar representada por abogado, y que no fué informada de ese derecho ni tampoco renunció a él.

＊　　　＊　　　＊　　　＊　　　＊　　　＊　　　＊

"La regla general establecida por una larga serie de decisiones empezando con *Ex parte Carll*, 106 U. S. 521, 1 S. Ct. 535, 27 L. Ed. 288, es que el poder para revisar una sentencia criminal condenatoria a través de un auto de hábeas corpus está circunscrito a determinar la jurisdicción de la corte para juzgar al acusado por la ofensa y para condenarlo a cárcel. En el reciente caso de *Johnson* v. *Zerbst*, 304 U. S. 458, 465, 58 S. Ct. 1019, 82 L. Ed. 1461, sin embargo, la Corte Suprema dijo que la regla debe interpretarse y aplicarse en tal forma que salvaguarde—y no que destruya—las garantías constitucionales a la vida y a la libertad. La Corte resolvió que esta extensión de la regla incluía exámenes de hechos fuera de, pero no inconsistentes con, el récord, y el deber, una vez determinados los hechos, 'de "disponer de la parte como lo requiera la ley y la justicia"' (página 1024). Mirando el récord encontramos la alegación de la peticionaria al efecto de que en el momento del juicio ella estaba mentalmente incapacitada para entender la naturaleza de la acusación en su contra o de defenderse. Sostiene

que cuando fué arrestada y juzgada estaba totalmente bajo la influencia de una droga suministrádale sin su conocimiento y consentimiento, y que, en su consecuencia, ella no sabía lo que estaba ocurriendo en la corte cuando fué juzgada y condenada; y que este estado de incompetencia mental le duró los cinco días dentro de los cuales tenía derecho para solicitar una revisión. Si esta alegación es cierta, la ley y la justicia requieren que se la absuelva. Siguiendo, por lo tanto, la regla expuesta en *Johnson* v. *Zerbst,* creemos propio que se devuelva el caso a la Corte de Distrito con instrucciones de que se expida el auto, se oiga la evidencia, y sobre las bases de la vista se proceda a determinar si es o no verdad que la peticionaria estaba, cuando fué arrestada y juzgada, tan afectada mentalmente como para estar imposibilitada de entender la naturaleza del proceso en su contra y de defenderse. Pero el examen debe circunscribirse sólo a ese punto.

"El juicio y la condena de una persona mental y físicamente incapacitada para defenderse, viola ciertos principios inmutables de justicia que son inherentes a la idea fundamental de un gobierno libre. *Powell* v. *Alabama,* 287 U. S. 45, 71, 53 S. Ct. 55, 77 L. Ed. 158, 84 A.L.R. 527. Tal es el caso que presenta el récord. Si los hechos están de acuerdo con las alegaciones, entonces la peticionaria tiene derecho a su libertad por ese solo fundamento. Si, por el contrario, las alegaciones en los particulares mencionados no son ciertas, el auto debe anularse. No hay, por lo tanto, oportunidad para que se interprete la Sexta Enmienda en cuanto a juicio en una corte municipal por violación de una ordenanza municipal.

"Debe desestimarse la petición en cuanto al Procurador General y el Director del Negociado de Prisiones, pero debe prosperar en cuanto a los otros demandados."

De acuerdo con la ley, el cuarto término de sesiones de esta corte correspondiente a este año expira hoy y el quinto no comienza hasta el primer lunes de noviembre próximo y como la decisión de este caso no admite demora no podremos estudiar en nuestra opinión como quisiéramos la cuestión sugerida por el fiscal en relación con la diferencia en gravedad de los delitos menos graves. También de cortes. Nos limitaremos, pues, a tomar por guía la decisión citada— *Sanders* v. *Allen, et al.,* supra—resolviendo el caso de acuerdo con sus peculiares circunstancias y a llamar la atención de

las cortes, en evitación de dificultades, hacia el más estricto cumplimiento de su deber en cuanto al reconocimiento del derecho constitucional de que se trata. Tal actitud por su parte no dañará en modo alguno la administración de la justicia y contribuirá por el contrario a arraigar en la práctica el espíritu de nuestras instituciones. Véase *Juan Oropesa Rolón, Ex parte*, decidido el catorce de este mes, ante; pág. 281.

Conocemos los hechos. Adquieren más vivo color transcribiendo lo dicho por el peticionario respondiendo a preguntas que se le hicieron en el acto de la vista. Es:

"Juez Presidente: (Al peticionario) ¿Usted tiene algo que decir a la Corte, ya que usted ha venido aquí?

"Peticionario: Yo lo que quería decir que la corte en ningún momento me ofreció un abogado para mi defensa. Y también cuando a mí la corte me sentenció, yo era ignorante, yo no sabía lo que quería decir culpabilidad ni inocencia.

"P.—¿Cuántos años tiene usted?

"R.—Yo hasta ahora tengo 18 años.

"P.—¿Usted estaba preso cuando le llevaron a la corte, cuando hizo la declaración de culpabilidad?

"R.—Yo estaba en el cuartel.

"P.—¿Usted estaba en el cuartel?

"R.—Sí, señor.

"P.—¿La policía lo puso preso a usted y lo llevaron a la corte?

"R.—Al cuartel.

"P.—¿Quién lo llevó a la corte?

"R.—Me llevó a la corte la detective.

"P.—¿La detective? ¿Usted no estuvo en libertad después de ser acusado? ¿Alguien prestó fianza por usted?

"R.—No, señor.

"P.—¿De manera que lo pusieron preso, lo llevaron a la corte y usted se declaró culpable?

"R.—Sí, señor.

"P.—¿En esas condiciones?

"R.—Me llevaron primeramente al cuartel donde me tuvieron tres días en el cuartel.

"P.—¿Tres días?

"R.—Tres días y luego del cuartel me pasaron a la corte, donde

el Juez me declaró culpable y a la vez me condenó a tres años de cárcel."

Nos encontramos, pues, frente a un caso en que una persona de alrededor de diez y siete años de edad que no ha recibido al parecer el beneficio· de una educación que le permita ejercitar por sí misma sus derechos, en la investigación de un delito o delitos de escalamiento es retenida por tres días en el cuartel de la policía, al cabo de los cuales es llevada por la misma policía a una corte municipal donde, inmediatamente, sin que se le advierta de su derecho a recibir la ayuda de un abogado, se declara culpable de los varios delitos que se le imputan, dictándose inmediatamente también sentencias condenatorias por tres años que va a cumplir de la corte a la cárcel.

Para esa persona letra muerta fueron la Constitución, el Acta Orgánica, el Código de Enjuiciamiento Criminal y la jurisprudencia de los tribunales en sus preceptos y principios sobre la materia. Una sentencia así dictada, no puede subsistir.

Puesta de relieve la verdad de lo ocurrido, de conformidad con la ley y la jurisprudencia, y atendidas las circunstancias peculiares del caso, *debe ordenarse la inmediata libertad del peticionario, sin perjuicio de cualquier otra acción legal que contra él pueda seguir el Pueblo de Puerto Rico.*

El Juez Asociado Sr. Travieso no intervino.