EL PUEBLO DE PUERTO RICO, demandante y apelado *v.* JOSÉ ALBERTO MURIEL, acusado y apelante.

Núm. 8337.—*Sometido:* Diciembre 3, 1940. *Resuelto:* Enero 28, 1941.

*Luis Ríos Algarín* y *Víctor M. Marchán,* abogados del apelante; *Hon. Procurador General George A. Malcolm, R. A. Gómez, Fiscal del Tribunal Supremo,* y *Luis Negrón Fernández, Fiscal Auxiliar,* abogados de El Pueblo, apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO emitió la opinión del tribunal.

José Alberto Muriel fué acusado en unión de Juan Ramón González y Mariano Rosario Centeno como autor de un delito de asesinato cometido en la persona de Juan Santa. Pidió juicio por separado y celebrado que fué, el jurado lo declaró culpable y la corte lo condenó a reclusión perpetua.

Apeló, imputando a la corte sentenciadora cinco errores cometidos al negarle su derecho a estar asistido de abogado, al admitir cierta evidencia sobre su identificación, al permitir que se introdujera como prueba determinada hoja de su expediente penal, al instruir al jurado y al negar su moción de nuevo juicio.

Tras un estudio detenido de los autos y de los alegatos e informes de la defensa y el fiscal, nos sentimos obligados a revocar la sentencia y ordenar la celebración de un nuevo juicio.

Para ello sólo tendremos que considerar el primero de los errores señalados que se formula textualmente como sigue:

"1. La corte erró al celebrar juicio al acusado momentos después de haberle designado abogado defensor, sin haber concedido a éste una oportunidad razonable de compenetrarse de los pormenores del caso y preparar la debida defensa del acusado, lo cual equivalió a negarle al acusado el derecho de estar asistido por abogado, y por ende la corte actuó sin jurisdicción en el proceso."

Para penetrarse bien de lo ocurrido y decidir a conciencia si la corte sentenciadora actuó o no de acuerdo con la ley y la jurisprudencia sobre el particular, precisa transcribir íntegro lo que sobre el incidente consta del récord. Es así:

"INCIDENTE PRELIMINAR A LA VISTA DEL CASO CONTRA JOSÉ ALBERTO MURIEL POR ASESINATO.—Visto ante el Hon. Juez Romany.

"El día 25 de abril de 1939 se llamó el caso de epígrafe para juicio, teniendo lugar los siguientes procedimientos:

"Acusado Muriel: Yo he llegado hoy a juicio, lo cual no he tenido abogado nombrado por la corte. Yo hace cinco meses que estoy detenido, y el otro juicio fué por el compañero mío, y yo no he preparado mi defensa, testigos ni nada.

"Lic. Belaval: Yo voy a atender a Juan Ramón González, quien pidió que lo defendiera en ausencia del Lic. Ortiz Toro.

"La Corte: ¿A quién fué que se le señaló abogado?

"Sr. Belaval: A Juan Ramón González.

"Subsecretario: José Alberto Muriel dijo que pondría abogado.

"La Corte: ¿Pero ante qué Juez se leyó la acusación?

"Subsecretario: Ante el Hon. Juez Roberto Todd. Tenemos entendido que el abogado del caso es el Lic. Casablanca.

"Acusado Muriel: Ni testigos ni nada tengo citados, porque yo no sabía cuándo se iba a ver el juicio.

"La Corte: La corte va a suplicar al Lic. Belaval que se haga cargo de la defensa en este caso.

"Sr. Belaval: Yo no tendría inconveniente, pero son tres acusados del mismo delito, y no sabemos cuál va a ser la defensa, y ya yo estoy enterado desde el punto de vista de uno de los acusados. Yo difícilmente podría defender bien a otro acusado.

"Sr. Acusado Muriel: Pero mis testigos.

"La Corte: (al acusado Muriel.) A usted se le citó el día 12.

"Acusado: Muriel: Sí, señor.

"La Corte: Y no hizo nada.

"Acusado Muriel: Usted sabe que nosotros hemos sido citados los tres para comparecer. No se sabía cuál de los tres era al que le tocaba el juicio.

"La Corte: Usted ha debido estar preparado para su juicio. Se le citó para que viniera aquí.

"Acusado Muriel: La vez pasada yo vine y vinieron los testigos.

"La Corte: Usted puede decir el nombre de sus testigos y la corte los manda a buscar inmediatamente.

"Acusado Muriel: Usted sabrá que para un juicio, para preparar la defensa de mi abogado. . . .

"La Corte: ¿Usted dice que le faltan sus testigos? La corte le va a nombrar ahora. . . .

"Acusado Muriel: ¿Usted cree que sea suficiente tiempo para la defensa?

"La Corte: Es que bajo esas condiciones. . . .

"Acusado Muriel: Yo suplicaría a la corte dos o tres días para la defensa de mi abogado.

"La Corte: ¿Qué sugiere el señor Fiscal en esas condiciones?

"Sr. Fiscal Franco: La sugerencia que yo hago es que se le designe abogado de oficio al acusado para proceder al juicio. Este acusado ha sido citado el día 12.

"La Corte: Pero no tiene abogado, y la Corte Suprema ha resuelto que el abogado forma parte del tribunal, forma parte de la corte, y la corte no tiene jurisdicción para conocer de un caso si no hay abogado.

Sr. Fiscal Franco: Para adquirir jurisdicción, yo sugiero que se le designe abogado.

"La Corte: Señor Ríos Algarín (que en ese momento entra al salón de la corte, acompañado del Márshal Sosa, y quien había sido solicitado por el Sr. Juez para que se hiciese cargo de este caso), la corte le suplica a Su Señoría que nos ayude en este caso. Y al Lic. Antonio Amadeo, la corte les suplica a los dos que nos ayuden en esto. Necesitamos un abogado para completar la jurisdicción de la corte, para que se administre justicia. La misión de ustedes es que se celebre un juicio imparcial y que los derechos del acusado sean garantizados, y la corte les suplica que se hagan cargo de este acusado.

"Lic. Ríos Algarín: En este caso yo estoy gustoso a aceptar la representación del acusado. Yo suplico a Vuestro Honor que, teniendo un caso en la otra sección de este tribunal, que en alguna forma se me suspenda aquel otro caso.

"Lic. Amadeo: Yo acepto también.

"Lic. Ríos Algarín: Me gustaría ver la acusación, antes de comenzar. Y solicitamos un receso, por lo menos de diez minutos.

"La Corte: Sí, como no. Se declara un receso en este caso para que los abogados puedan conferenciar con el acusado, y mientras tanto vamos a ir despachando otros asuntos del tribunal.

"(Después del receso, se procedió entonces a sortear un Jurado para el acusado en el caso de epígrafe contra José Alberto Muriel. Una vez debidamente constituído el Jurado, y después de leída la acusación y reiterada la alegación de inocencia por el acusado, tuvo lugar lo siguiente):

"Lic. Ríos Algarín: Antes de comenzar el desfile de la prueba, yo deseo que conste en récord la conformidad o inconformidad del acusado para aceptar esta representación. Me gustaría que el propio acusado, de sus propias manifestaciones, hiciera constar ante Vuestro Honor si está dispuesto a aceptar esta representación nuestra.

"La Corte: No, el acusado tiene derecho a un abogado, pero no al que él designe, al que él desee, porque entonces no se podría celebrar nunca juicio contra él. La corte confía en la inteligencia y capacidad de los abogados que representan al acusado y es suficiente.

"(El Márshal preguntó al acusado que si tenía testigos y dijo que no.)

"Se procedió entonces a la práctica de la prueba, comenzándose con el testigo Dr. Antonio Navas."

Cuando el juez de distrito actuó en esa forma, ya hacía un mes y diez y ocho días que esta Corte Suprema en el procedimiento de hábeas corpus seguido por *Ramón Fernández Laureano contra el Jefe del Presidio Insular*, 54 D.P.R. 416, inspirándose en lo resuelto por la Corte Suprema de los Estados Unidos en *John A. Johnson, Petitioner, v. Fred C. Zerbst, Warden*, 304 U. S. 458, había puesto de relieve de modo enfático la trascendencia del derecho que tienen los acusados a estar representados por abogado ante las cortes de justicia y había no sólo llamado vigorosamente la atención hacia el deber de éstas en relación con el asunto si que puesto en libertad al peticionario condenado a veinte años de presidio, por haberlo sido sin que la corte sentenciadora le proporcionara la ayuda legal necesaria para su defensa.

En dicho caso quedó resuelto de modo definitivo, que: "Toda persona acusada de delito tiene derecho, no sólo por las enmiendas quinta y sexta de la Constitución Federal si que también por los artículos 2, párrafo 2 de nuestra Ley Orgánica y 141 del Código de Enjuiciamiento Criminal, edición 1935 y por la ley de marzo 9, 1905 (Comp. 6158–60), a estar representada por abogado."

Se dirá que en este caso la corte sentenciadora designó abogado que representara al acusado como lo representó en el juicio y que por tanto cumplió con su deber. Sin embargo, no basta el mero nombramiento, la mera representación, si las circunstancias que concurren demuestran que el nombramiento fué una mera formalidad y que la representación no pudo ser eficiente.

En el caso de *Powell* v. *Alabama,* 287 U. S. 45, 57, resuelto más de cinco años antes que el de Zerbst, supra, la propia Corte Suprema de los Estados Unidos, se expresó así:

"Tampoco creemos que la situación mejorara por razón de lo ocurrido en la mañana del juicio. En ese momento, según aparece de la conversación arriba transcrita, el Sr. Roddy manifestó a la corte que él no comparecía como abogado, pero que le gustaría comparecer en unión del abogado que la corte pudiera designar; que no se le había dado una oportunidad para preparar el caso, que no estaba familiarizado con el procedimiento vigente en Alabama y que meramente había venido como amigo de ciertas personas interesadas; que creía que sería mejor para los acusados que él se retirara por completo del caso. El Sr. Moody, abogado de la localidad, expresó su deseo de cooperar con el Sr. Roddy en cuanto pudiera, dadas las circunstancias. A esto respondió la corte: 'Muy bien, todos los abogados que estén dispuestos; desde luego que yo no pediría a ningún abogado que compareciera si—.' Y el Sr. Moody continuó: 'Estoy dispuesto a hacer eso en su favor como abogado local; procederé a cooperar en todo lo que pueda.' Habiéndose llegado a este dudoso entendido, se continuó inmediatamente con los juicios. Los acusados, que eran jóvenes, ignorantes y analfabetos, y que estaban rodeados de un sentimiento hostil, y eran llevados y traídos por soldados, y estaban procesados por un crimen atroz, considerado como horrendo en la comunidad donde debían ser juzgados, fueron puestos en su consecuencia en peligro de perder sus vidas minutos después, que, por primera vez, un abogado investido de algún grado de responsabilidad, comenzó a asumir su representación.

"No basta asumir que los abogados tan súbitamente traídos al caso, creyeran que no existía defensa alguna y ejercitaran su mejor criterio al entrar a juicio sin preparación previa. Ni ellos ni la corte podían prever lo que surgiría de una rápida y minuciosa investigación de los hechos. No hubo tentativa alguna de practicar una investigación. Tampoco se dió ninguna oportunidad para ello. Los acusados fueron llevados a juicio festinadamente. El Juez Presidente Anderson, luego de expresar que no era su intención criticar duramente a los abogados que intentaron representar a los acusados en los juicios, dijo: '. . . los autos indican que la comparecencia fué más bien *pro forma* que diligente y activa . . .' Atendidas las circunstancias expuestas, resolvemos que no se les concedió a los acu-

sados el derecho a asistencia de abogado en una forma substancial. El decidir de otra manera equivaldría a ignorar la realidad. Esta conclusión se halla ampliamente sostenida por el razonamiento expuesto en un número abrumador de decisiones estatales, de entre las cuales citamos las siguientes: *Sheppard* v. *State,* 165 Ga. 460, 464; 141 S. E. 196; *Reliford* v. *State,* 140 Ga. 777; 79 S. E. 1128; *McArver* v. *State,* 114 Ga. 514; 40 S. E. 779; *Sánchez* v. *State,* 199 Ind. 235, 246; 157 N. E. 1; *Batchelor* v. *State,* 189 Ind. 69, 76; 125 N. E. 773; *Mitchell* v. *Commonwealth,* 225 Ky. 83; 7 S. W. (2d) 823; *Jackson* v. *Commonwealth,* 215 Ky. 800; 287 S. W. 17; *State* v. *Collins,* 104 La. 629; 29 So. 180; *State* v. *Pool,* 50 La. Ann. 449; 23 So. 503; *People ex rel. Burgess* v. *Risley,* 66 How. Pr. (N. Y.) 67; *State ex rel. Tucker* v. *Davis,* 9 Okla. Cr. 94; 130 Pac. 962; *Commonwealth* v. *O'Keefe,* 298 Pa. 169; 148 Atl. 73; *Shaffer* v. *Territory,* 14 Ariz. 329, 333; 127 Pac. 746.

"Es cierto que una grave e inexcusable tardanza en poner en vigor nuestro derecho penal constituye uno de los grandes males de nuestra época. Frecuentemente se conceden prórrogas durante períodos de tiempo innecesariamente largos, y tardanzas inherentes a la resolución de mociones de nuevo juicio han venido a ser en apelación en muchos casos, un marcado reproche a la administración de la justicia. La rápida decisión de casos criminales es algo que debe estimularse y alabarse. Pero para llegar a tal resultado no se debe despojar a un acusado de delito grave, de su derecho a que se le conceda tiempo suficiente para consultar con su abogado y preparar su defensa. El hacer tal cosa no equivale a proceder rápidamente dentro del espíritu de ecuanimidad de la justicia organizada y sí a proceder con la precipitación de la turba."

No hay duda de que fueron más dramáticas las circunstancias que concurrieron en el caso de Powell, supra, que las que en éste concurren, pero los principios aplicables, en el fondo, son los mismos.

Aquí el propio acusado comienza manifestando que había "llegado a juicio" sin abogado nombrado por la corte, que llevaba cinco meses preso, que no tenía preparada su defensa, que no tenía sus testigos. Se dirige la corte al abogado Sr. Belaval. Éste manifiesta que tiene que atender a ótro de los coacusados, Juan Ramón González. Informa el Subsecretario del tribunal que Muriel había dicho "que

pondría abogado'' y luego que tenía entendido ''que el abogado del caso es el Lic. Casablanca.'' Sin embargo, si ello era así, Casablanca no estaba presente ni consta que fuera citado.

Insiste Muriel en que no tenía citados sus testigos. Vuelve la corte a dirigirse al Sr. Belaval y le sugiere se haga cargo de la defensa y el abogado juiciosamente contesta: ''Yo no tendría inconveniente, pero son tres acusados del mismo delito, y no sabemos cuál va a ser la defensa, y ya yo estoy enterado desde el punto de vista de uno de los acusados. Yo difícilmente podría defender bien a otro acusado.''

Apunta el acusado personalmente ''pero mis testigos. . .'' y dice la corte, ''A usted se le citó el día doce.'' Replica Muriel, dirigiéndose al juez, ''Usted sabe que nosotros hemos sido citados los tres para comparecer. No se sabía cuál de los tres era al que le tocaba el juicio.''—De los autos consta que los tres coacusados al leérseles la acusación solicitaron juicios por separado.—Y la corte contesta: ''Usted ha debido estar preparado para su juicio. Se le citó para que viniera aquí.'' La corte le indica, luego de otra manifestación de Muriel, que nombre sus testigos para citarlos. Insinúa el acusado que el tiempo no sería suficiente y termina suplicando la concesión de dos o tres días para su defensa.

Duda al parecer la corte y le pide al fiscal que sugiera lo que debe hacerse ''bajo esas condiciones'' y el fiscal sugiere que se nombre un abogado de oficio, insistiendo en que el acusado había sido citado desde el doce. Sigue la indecisión en el ánimo de la corte actuando sin duda bajo la influencia de la reciente decisión de esta corte ya citada y el fiscal insiste en que para adquirir jurisdicción será suficiente la designación de un abogado, pero se decide finalmente y nombra abogado de oficio al Lic. Ríos Algarín que acepta. ''Me gustaría,'' dice, ''ver la acusación antes de comenzar.''

Ver la acusación, no al acusado. Es la corte la que al declarar el receso lo hace "para que los abogados puedan conferenciar con el acusado."

No consta el tiempo exacto transcurrido, pero muy breve tuvo necesariamente que ser ya que el juicio continuó en la misma sesión. Sólo se pidieron diez minutos. Tampoco consta si el abogado conferenció con el acusado. Aparece que dijo antes de comenzar la práctica de la prueba que le gustaría que se hiciera constar en récord las propias manifestaciones del acusado sobre si estaba dispuesto a aceptar su representación, petición que súbitamente, sin nada inquirir, resolvió la corte en los siguientes términos:

"No, el acusado tiene derecho a un abogado, pero no al que él designe, al que él desee, porque entonces no se podría celebrar nunca juicio contra él."

Es cierto que cuando un acusado no contrata por sí mismo los servicios de un abogado, cuando es insolvente como en este caso, no tiene derecho a que la corte designe tal o cual abogado que no esté a su alcance o dentro de su poder designar, pero la actitud asumida por la corte en un caso extremo como éste es insostenible dentro de la buena práctica a seguir. Un acusado no tiene derecho por ejemplo en San Juan, a pedir que se le nombre de oficio un abogado de Mayagüez o de Ponce cuando el de San Juan que se le nombra está perfectamente cualificado, pero un acusado tiene derecho a hablar en relación con su abogado. Podría expresar algo a la corte que la convenciera de que el abogado designádole no podría o no estaba en condiciones de defenderlo. Podría sugerir algún otro abogado que estuviera dispuesto a aceptar. Impedir que el acusado actúe en forma alguna como se hizo en este caso, es un procedimiento abusivo que no puede tolerarse.

De las anteriores consideraciones y aún más elocuentemente del récord mismo apreciado directamente, sin comentarios de fuera, por la razón y la conciencia, se deduce y

concluye que la corte no cumplió con su deber de proporcionar al acusado la ayuda legal necesaria para su defensa. No colocó al abogado que designara en verdaderas condiciones de cumplir su misión bien y fielmente.

Es cierto que de la lectura de la transcripción se desprende que el abogado Sr. Ríos Algarín hizo lo que pudo durante el juicio por defender al acusado; pero se desprende también su falta de conocimiento de los antecedentes del proceso, de contacto con el acusado y con los hechos, y a este respecto parece justo y conveniente transcribir del alegato lo que sigue:

"La corte sentenciadora en el caso de vuestro acusado apelante, si bien tuvo en cuenta que el acusado era acreedor a estar representado por letrado defensor, convirtió en negativa esta asistencia legal que proporcionó al acusado al proceder a celebrar el juicio cuando los abogados nombrados que no conocían al acusado ni los hechos del caso no habían tenido apenas diez minutos para preparar la defensa del acusado. Es humanamente imposible, Sres. Jueces, que un abogado en tan corto espacio de tiempo pueda preparar una defensa digna de llamarse tal, sin que su actuación sea una mera representación formal.

" 'The right of an accused to have his counsel prepare for trial is a substantial right and to deny counsel sufficient time to prepare defense is also the denial of a substantial right and under such circumstances to have counsel appointed to represent him would be a meaningless formality and a barren right.

"A trial is a farce if the defendant be not given an opportunity to prepare for trial. *Schields* v. *McMicking*, 23 Phil. Is. 526).'

"Vuestro acusado apelante pidió personalmente a la corte por lo menos tres días para buscar un abogado y preparar su defensa. La corte no accedió y procedió a nombrar en el acto abogado de oficio y proseguir el caso inmediatamente. .

"Podría argumentarse quizás que el abogado debió haber pedido la suspensión del caso para así poder preparar una mejor defensa. El abogado nombrado, quien es a la vez suscribiente de este alegato, no lo hizo así por no entorpecer los procedimientos de la corte y no dilatar los fines de la justicia, pero al través de un estudio posterior del caso ha podido darse cuenta que de haber contado con un tiempo razonable para compenetrarse mejor de los hechos del mismo, hubiese

podido presentar una mejor defensa. Pero aun suponiendo que por negligencia o por desconocimiento de la ley el abogado no hubiese solicitado tal suspensión, de ello no debiera hacerse víctima al acusado, máxime en un caso que aparejaba reclusión perpetua, y en el que la designación del abogado estuvo a cargo enteramente de la corte y. no del acusado. No es de justicia que recaiga sobre un acusado todo el peso de un posible error o inadvertencia de su abogado, principalmente en un caso de las circunstancias del que nos ocupa.''

*Debe revocarse la sentencia apelada y ordenarse la celebración de un nuevo juicio.*