FEDERICO DIJOLS, peticionario, *v.* ANDRÉS A. LUGO, ALCAIDE DE LA CÁRCEL DE DISTRITO DE SAN JUAN, demandado.

Núm. 127.—*Sometido:* Febrero 5, 1941. *Resuelto:* Febrero 6, 1941.

*Federico Dijols,* por su propio derecho; *Hon. Procurador General George A. Malcolm, R. A. Gómez, Fiscal del Tribunal Supremo* y *Luis Negrón Fernández,* abogados de El Pueblo, apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

Federico Dijols presentó ante este tribunal una solicitud de hábeas corpus. Como no estaba jurada y el peticionario se encontraba preso, se ordenó al alcaide de la cárcel que lo trajera a secretaría para darle una oportunidad de cumplir con ese requisito. Cumplió y el auto fué expedido, señalándose la vista para la tarde de ayer.

A ella comparecieron el alcaide con el peticionario y el fiscal. Presentó el alcaide su informe y el peticionario declaró e introdujo en evidencia el récord 8330, El Pueblo v. Federico Dijols, Infracción Ley 45 de 1932 (debe ser Ley 43) de esta Corte Suprema. Habló el peticionario. Informó el fiscal. Replicó el peticionario. Y el caso quedó sometido.

De la solicitud y del informe del alcaide resulta que el peticionario se encuentra preso a virtud de sentencia dictada en contra suya por la Corte de Distrito de Bayamón en enero 26, 1940, imponiéndole cuatro meses de cárcel como autor de una infracción a la Ley 43 de 1932, y del récord 8330 aparece que apelada esa sentencia para ante este tribunal, el recurso fué desestimado, por abandono, en noviembre 6, 1940.

En la solicitud se alega:

"4°.—Que al dictar sentencia la Corte de Distrito de Bayamón, P. R., contra el peticionario esa corte actuó sin jurisdicción sobre la persona del peticionario.

"5°.—Que el peticionario no es culpable de dicho delito porque en ningún momento se probó por la prueba del Pueblo que el peticionario se hiciera pasar y actuara como abogado y asimismo se desprende de la transcripción de autos que está radicada en la Secretaría de la Corte Suprema de Puerto Rico.

"6°.—Que durante la vista de este caso ni en el acto de la corte dictar sentencia la corte no le hizo comprender al peticionario el derecho constitucional que tenía el acusado de ser representado por representación profesional de abogado.

"7°.—Que todo lo actuado por la Corte de Distrito de Bayamón, P. R., es nulo por haberse hecho en violación a la Carta Orgánica de Puerto Rico y especialmente al Art. 141 del Código de Enjuiciamiento Criminal vigente en Puerto Rico."

Del récord 8330 consta que la denuncia, base del proceso, es, en lo pertinente, como sigue:

"Yo, Benicio Sánchez Castaño, . . . formulo denuncia contra Federico Dijols . . . Que en 19 de diciembre de 1938, y en Comerío, P.R. . . . Federico Dijols, allí y entonces, de una manera ilegal, maliciosa, voluntaria y criminalmente y a sabiendas violó lo dispuesto en el artículo 12 de la ley Núm. 45 de 14 de mayo de 1932, 'Ley para determinar la organización del Colegio de Abogados de Puerto Rico,

especificar sus funciones y sus deberes y para otros fines', según ha quedado enmendada; porque sin haber sido debidamente admitido y licenciado para el ejercicio de la abogacía, trataba de hacerse pasar y pasaba y actuaba como abogado en ejercicio, preparando la demanda y otros escritos en el caso Sidelio Rivera, demandante, v. Juan Vilchi, demandado, sobre Cobro de Dinero, Civil Núm. 250 de la Corte Municipal de Bayamón, a sabiendas de que no era tal abogado y no estaba autorizado para actuar como tal abogado.''

La prueba de cargo, según la transcripción de la evidencia, fué, en resumen, la siguiente:

Sidelio Rivera, comerciante de Comerío, declaró que el acusado fué a su tienda y le preguntó si tenía algunas cuentas por cobrar. Tenía la de Juan Vilches. Se la dió y al día siguiente el acusado trajo la demanda y él la firmó y le dió cinco dólares para radicarla. No sabe quién la preparó. Dió nueve pesos a Antonio Román Benítez, un abogado, quien fué donde él con el acusado y le habló para seguir el pleito.

Providencia Cortés, Subsecretaria de la Corte Municipal de Bayamón, manifestó que la demanda de Rivera contra Vilches, sobre cobro de dinero, firmada por Rivera, la llevó a radicar el acusado; que "a lo último se presentó un abogado, Román Benítez, con un escrito para actuar como abogado del caso"; que el acusado no le manifestó que era abogado, ni ha firmado documentos como abogado, ni ha comparecido a la corte como abogado; que no sabe quién hizo la demanda y que el abogado del pleito lo era Antonio Román Benítez.

Manuel Torres Reyes, abogado, conoce al acusado, y a la pregunta: "¿Sabe a qué se dedica?" contestó: "Bueno le he visto haciendo diligencias en la corte. Específicamente no sé la profesión a que se dedica. En cuanto a ese caso (el de Rivera v. Vilches) en cierta ocasión fué a mi oficina y me habló del caso, de la demanda de Sidelio Rivera contra Vilches; me dijo que si quería intervenir en ese caso; en esa fecha no quedamos en nada; posteriormente—fué el día en que se iba a ver el caso en su fondo—me habló para que viera el caso; le pregunté quién había hecho la demanda y me dijo que la había hecho él.''

Y luego agregó: "Específicamente yo tengo conocimiento de tres o cuatro casos. Primero fué el caso éste. Y el segundo caso se refiere a un ejecutivo hipotecario en que la parte demandada lo era una viuda de Comerío, Josefa Díaz, si mal no recuerdo. En ese caso la señora Díaz fué acompañada del señor Dijols a mi oficina y me entregó trece dólares para hacer unas cuantas gestiones y el señor Dijols me dijo que había cierto documento que podía impugnar el procedimiento ejecutivo hipotecario. Y me llevó el documento a mi oficina.

Luis Feliú, márshal de la Corte Municipal de Bayamón, en relación con el caso de Rivera v. Vilches, expresó: "No recuerdo la fecha bien exacta, pero el señor Dijols fué en representación del señor demandante al barrio Palomas para identificar una yunta de bueyes que se señalaba en la moción de embargo." El acusado no le dijo que era abogado. Le entregó los papeles.

Terminada la prueba pidió el acusado que se le absolviera y la corte declaró "sin lugar la moción de *nonsuit*."

Declararon entonces, presentados por el acusado, Guido Umpierre, José Santiago González y José María Pérez. Umpierre, taquígrafo del Fiscal del Distrito de Bayamón, contestó haber tomado cierta declaración a José Santiago González y al tratar de introducirla el acusado en evidencia se opuso el fiscal, sosteniendo la corte su oposición; Santiago González manifestó que conocía al acusado y a Sidelio Rivera; que declaró ante el fiscal. No se le permite decir lo que declaró. Se le muestran unos documentos y contesta que los prepararon Sidelio y él, sin que en ello interviniera el acusado, limitándose éste a traerlos a la corte; que el testigo es tenedor de libros, que Sidelio fué a su oficina, que habían conseguido una fórmula de demanda y llenaron los espacios en blanco, y José María Pérez declaró haber llamado al acusado "para que se viera con un abogado y me gestionara el cobro de una cuenta, y a los diez o doce días me presentó al licenciado Torres para que me gestionara la cuenta."

Llamó entonces el fiscal a Sidelio Rivera quien ratificó lo declarado con respecto a la demanda en el caso contra Vilches y explicó que la que preparó con Santiago González fué otra contra José María Santiago. También, de nuevo, al abogado Manuel Torres Reyes. Dijo refiriéndose al caso de Rivera contra Vilches que el acusado le había manifestado que "había preparado la demanda y que había que corregir cierto defecto en la demanda."

Presentó por último el acusado a Edelmiro Mercado, policía insular, que declaró que Antonio Román Benítez fué a Comerío y solicitó al acusado, viéndolo y dándole unas monedas.

Insistió el acusado en que se le absolviera y la corte lo condenó como autor del delito imputádole o sea el previsto y castigado en el artículo doce de la Ley para determinar la organización del Colegio de Abogados de Puerto Rico, especificar sus funciones y deberes, y para otros fines, Núm. 43 de 1932, páginas 523, 529, que dice:

"Toda persona que sin ser debidamente admitida y licenciada para el ejercicio de la profesión según se dispone por esta Ley o que durante la suspensión de su licencia practique como persona capacitada para ello, se anuncie como tal o trate de hacerse pasar como abogado en ejercicio, será culpable de delito menos grave; y convicta que fuere, se le impondrá multa no menor de cien (100) dólares o prisión por período no menor de dos meses, o ambas penas."

Nada de modo afirmativo consta del récord 8330 con respecto a lo ocurrido en el juicio ante la Corte de Distrito de Bayamón en relación con la defensa del acusado por medio de abogado, pero el acusado, como peticionario en este procedimiento de hábeas corpus, declaró:

"La alegación del peticionario se funda en que este peticionario fué denunciado en la Corte de Distrito de Bayamón, y el día 25 de enero de 1939 se vió la vista del caso. Compareció El Pueblo por el Sr. Fiscal y el peticionario no encontró abogado. . . . Yo mientras estaba gestionando abogado el juez le decía a los abogados que no me sirvieran a mí. Se lo decía al abogado Fournier y al abogado Jusino. . . . El Sr. Fiscal se interesó en que me defendieran. Me

encontré indefenso y Fournier me dice a mí, 'Dijols, el caso tuyo es un caso en que no hay prueba.' Quince días antes yo le había pagado a Víctor Gutiérrez Franqui para mi defensa y él mandó conmigo una moción a donde el Sr. Benicio Sánchez para que me la firmara y una carta pidiéndole permiso para ir a la corte a defenderme. Llevé la carta y junto con la carta la moción para suspender la v'sta. Dejamos las cosas así. A Víctor Gutiérrez Franqui se le olvidó y comparecí solo a la Corte de Distrito de Bayamón sin abogado. Traté de defenderme porque ya el abogado Fulgencio Piñero me había dado ciertas ideas y seguí defendiéndome solo y el caso se apeló para el Supremo. . . . Yo comparecí a la corte y traté de hacer gestiones para conseguir abogado para la prueba. Yo gest'oné a Víctor Gutiérrez Franqui, y estaba Jusino, el Lcdo. Piñero, estaba Fulgencio Piñero y estaba Fournier y hasta Leopoldo Santiago y mientras hacía gestiones para que me defendieran resolvieron que nadie se prestó a defenderme. El juez no dejó que me defendieran.''

No nos merece crédito en toda su extensión el testimonio del peticionario. Va a nuestro juicio demasiado lejos en sus imputaciones, pero apreciándolo a conciencia en relación con las constancias del récord 8330, nos parece enteramente claro que la realidad de los hechos es que la corte de distrito no llegó a adquirir jurisdicción para juzgarlo de acuerdo con la ley al dejar de advertirle sobre su derecho a estar representado por abogado, nombrándole uno de oficio que lo representara, en su caso, no obstante hallarse en la corte un buen número de ellos.

El fiscal llamó la atención sobre la manera hábil como se condujo el acusado durante el juicio, interrogando a los testigos, formulando oposiciones, tomando excepciones y pidiendo que se le absolviera libremente. Ello es cierto. Sin embargo, la acusación formulada, la ley que se alegó infringida y la evidencia presentada hablan por sí mismas de modo elocuente de lo necesario que era en un caso de esta naturaleza la intervención de un letrado y de cuán distinto hubiera podido ser tal vez el resultado final de la causa a virtud de la intervención de una mente ilustrada, conocedora de la ley y la jurisprudencia, en defensa del acusado.

Resultando claro que la corte no advirtió de su derecho al acusado, que éste no estuvo representado por abogado y que no renunció a su derecho a estarlo, su caso cae dentro del espíritu de la decisión de la Corte Suprema de los Estados Unidos en el de *Johnson* v. *Zerbst,* 304 U. S. 458, y dentro del de las de esta Corte Suprema en *Ex parte Hernández Laureano,* 54 D.P.R. 416, *Pueblo* v. *Rivera,* 54 D.P.R. 611, *Pueblo* v. *Correa,* 54 D.P.R. 795, *Pueblo* v. *Mercado,* 54 D.P.R. 903, *Pueblo* v. *Rodríguez,* 54 D.P.R. 1004 (*per curiam*), *Pueblo* v. *Santana,* 55 D.P.R. 239, *Ex parte Oropesa,* 55 D.P.R. 281, *Ex parte Rodríguez,* 55 D.P.R. 415, *Ex parte Resto,* 55 D.P.R. 725, *Pueblo* v. *Delestre,* 55 D.P.R. 1000 (*per curiam*) y *Pueblo* v. *Muriel,* 57 D.P.R. 914.

Si en alguna ocasión debieron esmerarse tanto el Colegio de Abogados como corporación y los abogados del distrito, en particular los que se encontraban en corte el día del juicio, como la corte, en que el acusado estuviera asistido de la mejor defensa legal imaginable, fué en ésta en que se imputaba a un ciudadano el ejercicio ilegal de la abogacía. Pudo y debió en tal momento la profesión mostrarse en toda su grandeza y no lo hizo.

"Que asumiré la representación y me haré cargo solamente de aquellas causas, procedimientos y defensas que en mi opinión sean justas y dignas de ser discutidas legalmente, con excepción de la defensa de personas a quienes se imputare la comisión de un delito público", jura cada abogado al ser admitido por esta corte al ejercicio de su noble profesión, y agrega: "Que nunca rechazaré, por consideración de carácter personal que pueda afectarme, la causa del indefenso u oprimido, ni demoraré en forma alguna el mantener los derechos de una persona por motivos de lucro o malicia."

Va tan lejos la promesa de defensa que exceptúa la de las personas a quienes se imputa la comisión de un delito público de aquella investigación previa escrupulosa que, como regla general, debe hacerse de sus méritos legales antes de asumirla en cualesquiera otros casos, y se reafirma la valerosa

conducta a seguir cuando de la causa del indefenso u opri-
mido se trata, al colocar dicha causa por encima del interés
personal del abogado.

*Procede la libertad del peticionario, y debe decretarse.*