EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* CÁNDIDO RODRÍGUEZ MEDINA, acusado y apelante.

Núm. 13635.—*Sometido:* Abril 1, 1949. *Resuelto:* Mayo 13, 1949.

*Romany & Romany,* abogados del apelante; *Hon. Procurador General Vicente Géigel Polanco y J. Rivera Barreras, Fiscal del Tribunal Supremo,* abogados de El Pueblo, apelado.

El Juez Asociado Señor Marrero emitió la opinión del tribunal.

Cándido Rodríguez Medina fué procesado ante la Corte de Distrito de Humacao por el delito de abuso de confianza. La médula de la acusación fué que él se había apropiado de

la suma de $784.05 que en cheques y giros telegráficos le fué entregada por Rafael Aguiar, con instrucciones de que la depositara en la Oficina Postal de Humacao en un sobre dirigido al Banco de Nova Scotia, Fajardo. Celebrado el juicio correspondiente, el jurado rindió veredicto condenatorio y la corte le sentenció a sufrir la pena de dos a cuatro años de presidio, con trabajos forzados. No conforme, apeló para ante nos.

■■ Sostiene en su alegato en primer término que la corte inferior cometió error al celebrar el juicio sin tener jurisdicción para ello, toda vez que el acusado no estuvo debidamente representado por abogado y porque si bien es verdad que se le nombró letrado, ello se hizo en el momento mismo de comenzar el juicio y sin que el abogado así nombrado tuviera oportunidad de prepararse para defender al acusado.

Al ser llamado el caso para juicio la corte preguntó al acusado si tenía abogado y éste contestó que había venido sin abogado para decir y suplicar a la corte que le permitiera renunciar ese derecho, a fin de que él mismo pudiera conducir su propia defensa. Luego de hacérsele algunas preguntas adicionales, la corte creyó aconsejable designarle abogado para que lo asesorara en los trámites del caso. El abogado así nombrado entró a juicio y planteó inmediatamente una cuestión de derecho en favor del acusado, siendo la misma declarada sin lugar. Además, en el curso del juicio contrainterrogó a los testigos de El Pueblo y tomó excepción a ciertas resoluciones de la corte. Finalizada la prueba de cargo solicitó se declarara un receso de cinco minutos para preparar la defensa. Se declaró el receso solicitado y al constituirse de nuevo la corte, expuso al jurado su teoría del caso. Hasta ahí la situación que surge de autos en relación con el nombramiento de abogado y con su intervención en el caso.

Muchos han sido los casos resueltos por este Tribunal en que se ha consagrado el principio de que en todo caso por delito grave, y aun en ciertos *misdemeanors* el acusado tiene derecho a estar representado por letrado; de que la corte deberá advertirle de ese derecho; de que si el acusado no está en condiciones económicas de emplear un letrado, la corte deberá designárselo de oficio; y de que el acusado puede, desde luego, renunciar ese derecho, siempre que lo haga voluntariamente y de manera competente e inteligente. *Ex parte Hernández Laureano,* 54 D.P.R. 416; *Pueblo* v. *Muriel,* 57 D.P.R. 914; *Dijols* v. *Lugo, Alcaide,* 58 D.P.R. 5; *Berríos* v. *Saldaña,* 59 D.P.R. 903; 149 A.L.R. 1403, 1409 y casos citados.

Como hemos visto, el deseo del acusado de conducir su propia defensa no se materializó, y si bien es cierto que el letrado designado para que lo representara lo fué en el momento mismo de iniciarse el caso, lejos de solicitar éste de la corte que le concediera tiempo para cambiar impresiones con el acusado respecto a los hechos del caso y sobre su defensa, entró inmediatamente a juicio. Tal vez ello se debió a que el letrado nombrado estaba familiarizado con el caso, ya que era el mismo abogado que cuatro meses antes había representado al acusado en el acto de la lectura de la acusación. Bajo esas circunstancias, llegamos a la conclusión de que el apelante estuvo debidamente representado por letrado. Véase *Pueblo* v. *Carmona,* 67 D.P.R. 288, 291, donde al resolver una situación muy similar a la aquí envuelta dijimos que "los derechos sustanciales y constitucionales del acusado estuvieron debidamente protegidos."

Aprovechamos la oportunidad para consignar aquí que el momento más oportuno para designarle abogado de oficio a un acusado insolvente lo es el de la lectura de la acusación. Tal nombramiento no debe hacerse, sin embargo, para ese solo acto—como ocurrió en este caso—sino para que el abo-

gado represente al acusado durante la lectura de la acusación, cambie impresiones con éste, se entere de todos los detalles del caso y prepare su defensa en tal forma que el día que se llama el mismo para juicio éste pueda celebrarse sin dilación alguna y el letrado esté en las mejores condiciones para asumir la defensa de su representado. Por supuesto, si antes de la lectura de la acusación el acusado solicita en debida forma que se le designe un abogado de oficio, tal nombramiento, de proceder, debe hacerse prontamente, pero siempre para que el abogado nombrado represente al acusado en todas las etapas del proceso y hasta que se dicte sentencia en el mismo por la corte.

Cree el acusado igualmente que fué un error de la corte inferior el no permitir que Luis Gómez Fuentes declarara sobre la conversación habida entre el testigo del fiscal Ramón M. Virella y el acusado. Declaró Virella que es *detective* y que habiendo recibido instrucciones de sus superiores para que arrestara a Cándido Rodríguez Medina, lo buscó en San Juan, Cayey y Juncos y no lo halló; que estando él en el Cuartel de la Policía de Humacao se presentó la hermana de Rodríguez Medina e hizo entrega de éste; y que llevado a la cárcel de distrito, el acusado le dijo: "Yo me declararé culpable y entonces me acojo a la probatoria."

Terminada la prueba de cargo, y luego de exponerse al jurado la teoría de la defensa, se llamó como primer testigo del acusado a Luis Gómez Fuentes. Manifestó éste que conoce a Rodríguez Medina desde el día que fué ingresado en la cárcel; que lo mandaron con el detective Virella. Al preguntársele si allí hubo alguna conversación entre Virella y el acusado, el fiscal se opuso a que el testigo contestara. La defensa informó a la corte que había traído a Gómez para impugnar el testimonio del policía Virella, pero más tarde rectificó e indicó que lo había traído para que declarara sobre lo dicho por el acusado en presencia de Virella en la cárcel

de distrito, indicando que "si resulta que es lo mismo que dijo Virella, confirma a Virella." Se opuso el fiscal nuevamente por ser entonces impertinente el testimonio y la corte le sostuvo, anotándose la defensa una excepción. Indudablemente, lo más correcto hubiera sido que la corte permitiera que el testigo Gómez declarara sobre lo manifestado por el acusado en la cárcel de distrito en presencia de él y de Virella. Quizá hubiera declarado lo mismo que a ese respecto declaró Virella. Tal vez no. Pero, de todos modos, no había razón fundamental para que su testimonio fuera excluído. Empero, no habiendo la defensa indicado a la corte cuál sería el testimonio de Gómez, ni si éste era pertinente, y habiendo admitido, por el contrario, que Gómez quizás confirmaría lo dicho por Virella, el error cometido no debe dar lugar a la revocación de la sentencia.

■ También alega el apelante que la corte erró al permitir que el testigo Virella manifestara al jurado que quería investigar si alguna persona había aconsejado al acusado a cometer el delito que se le imputaba. No vemos en verdad que este error fuera cometido, ya que el testigo manifestó también que al interrogar sobre ese extremo al acusado éste admitió que "él había sido solo, que nadie lo había aconsejado y que nadie más estaba envuelto en este caso," y esa manifestación del acusado era claramente admisible en evidencia. *Pueblo* v. *Rodríguez,* 65 D.P.R. 530.

■ Mientras se contrainterrogaba al testigo Virella, el fiscal manifestó que lo que la defensa pretendía con sus preguntas era impugnar el conocimiento que el testigo tenía del acusado. Tampoco vemos cómo pudo esto ser perjudicial al apelante, ya que del contrainterrogatorio claramente se desprendía no sólo que ésa era la situación, si que también que el acusado quería demostrar que Virella tenía prejuicios contra él. *Cf. Pueblo* v. *Ojeda,* 66 D.P.R. 419, 421.

 Llamada la hermana del acusado como testigo, el fiscal se opuso por haber estado ella todo el día en sala y oído cuanto habían declarado los testigos que la habían precedido. La defensa manifestó en seguida que ella no declararía sobre los hechos, sino que meramente diría que teniendo conocimiento de que se había expedido una orden de arresto contra su hermano, al presentarse éste en su casa ella lo cogió y lo llevó al Cuartel de la Policía. La corte resolvió que habiendo el testigo Virella declarado sobre ese extremo, las manifestaciones de la hermana del acusado resultarían impertinentes e inmateriales.

El hecho de que una persona haya estado en sala durante el juicio y oído el testimonio de otras personas, no es de por sí suficiente motivo para que se le excluya como testigo. *Pueblo* v. *Silva,* 48 D.P.R. 347. Ésa es cuestión que está más bien sujeta a la sana discreción del tribunal sentenciador. Sin embargo, cuando en un caso como el presente se le informa a la corte que ese testigo no tiene conocimiento de los hechos y que sólo va a declarar sobre un extremo en relación con el cual ya otra persona ha declarado, su testimonio resulta acumulativo. No es posible resolver en tal caso que la corte abusó de su discreción y que, por ende, al así actuar cometió un error que da lugar a la revocación. *Pueblo* v. *Rivera,* 67 D.P.R. 194, 202.

 No hizo la corte un análisis de la prueba a los señores del jurado. Insiste el acusado que esto constituyó un error, citando el caso de *Pueblo* v. *Lebrón,* 61 D.P.R. 657. Terminada la presentación de evidencia por las partes, éstas manifestaron que no deseaban informar verbalmente ante el jurado. Invitó el fiscal entonces a la defensa a solicitar de la corte que no se hiciera un resumen de la prueba al jurado y el letrado del acusado contestó: "Estamos de acuerdo." En vista de ello, la corte no hizo al jurado tal resumen.

Es cierto que de acuerdo con el inciso 8 del artículo 233 del Código de Enjuiciamiento Criminal la corte está obligada

a trasmitir al jurado un resumen de la evidencia, pero cuando por estipulación expresa de las partes el acusado renuncia a ese derecho, él no tiene motivo alguno para quejarse. *Pueblo* v. *Valentín,* 63 D.P.R. 787, 794. No obstante, aunque se estipule que no se haga un resumen de la prueba al jurado y aunque no constituya un error el acceder a ello, *las cortes, en bien de la justicia, deben rechazar tal estipulación y hacer siempre el resumen requerido por la ley.* Es conveniente repetir aquí lo dicho en *Pueblo* v. *Lebrón,* supra, a la pág. 670, a saber:

"La práctica de omitir el juez hacer el resumen de la prueba, no sólo es contraria al precepto expreso de la ley, si que perjudicial a los fines de la justicia. La razón por la cual debe hacerse un resumen de la prueba es, como dice el precepto transcrito, traer a la atención del jurado los hechos esenciales presentados por una y otra parte. En otras palabras, separar la paja del grano, evitando así que el jurado pueda ser inducido a error o confusión, al tomar en cuenta hechos que son inmateriales para la resolución del caso. Es más, el juez en sus instrucciones no debe transmitir la ley en abstracto. El jurado se compone de personas legas en materia de Derecho y transmitirles la ley en esa forma, equivale a poner en sus manos los estatutos para que ellos resuelvan el caso de acuerdo con la interpretación que crean más correcta. Por eso la mejor práctica es, después de hacer el resumen, exponer al jurado las distintas conclusiones a que pueden llegar en la apreciación de la prueba e indicarles entonces el veredicto que proceda de acuerdo con cada una de dichas conclusiones. De esa forma la misión del jurado queda circunscrita a sus verdaderos límites, es decir a determinar las cuestiones de hecho, y se evita que a pesar de estar todos de acuerdo en cuanto a los hechos, incurran en error en la aplicación de la ley."

*Debe confirmarse la sentencia apelada.*