EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* CAR-
LOS CARIDE SAMOT, acusado y apelante.

Núm. 14193.   *Sometido:* Febrero 1, 1950.   *Resuelto:* Abril 21, 1950.

*Santos P. Amadeo,* abogado del apelante; *Hon. Procurador Ge-
neral Vicente Géigel Polanco (Carlos Santana Becerra, Pro-
curador General Interino, en el alegato), J. Rivera Barreras,
Fiscal del Tribunal Supremo y Fernando Fornaris, Jr., Fiscal
Auxiliar,* abogados de El Pueblo, apelado.

EL JUEZ PRESIDENTE SEÑOR DE JESÚS emitió la opinión del
tribunal.

El apelante fué acusado de un delito de asesinato en pri-
mer grado.   Aunque en la fecha de la lectura de la acusación
se le había nombrado un abogado, éste no asistió el día seña-

lado para el juicio, por lo que la corte, en el momento de llamarse el caso, le designó otro abogado, quien, al preguntársele si estaba listo para juicio, contestó afirmativamente y a la vez hizo a la corte la siguiente manifestación: "El acusado *acaba de decirme* que él tiene dos testigos que están presos en la cárcel; si pudiéramos después mandarlos a buscar". (Bastardillas nuestras.) La corte ordenó al márshal que llamara por teléfono a la Cárcel de Distrito de San Juan para que trajesen inmediatamente dichos testigos, pero no aparece del récord que éstos comparecieran.

La prueba presentada por el fiscal fué al efecto de que el acusado, en la madrugada del 28 de diciembre de 1948, se hallaba en un *bar* acompañado de Felícita Pérez; que ésta puso a funcionar una "vellonera" y que mientras oían la música, el acusado súbitamente sacó un revólver y disparó contra su acompañante. El fiscal presentó en evidencia la confesión escrita del acusado, en la cual decía que estando sentado con la interfecta sintió un deseo momentáneo de matarla y eso lo impulsó a dispararle; además, el testimonio del dependiente del bar quien declaró que al oír la detonación inmediatamente miró y vió al acusado con el revólver en la mano y a la interfecta sangrando por una herida en la cara. De otro lado, el acusado declaró que la confesión que se le imputaba había sido hecha involuntariamente y que la interfecta se había suicidado.

A base de esta prueba, el jurado trajo un veredicto de asesinato en primer grado. En apelación se señala como error, entre otros, que el acusado no tuvo adecuada asistencia de abogado, tal como lo garantiza nuestra Carta Orgánica.

Claramente resulta de los autos que si bien en este caso se nombró un defensor al acusado, éste no tuvo en realidad la asistencia de abogado que garantiza la Carta Orgánica. Que su designación fué *pro forma* lo demuestra el hecho de que no tuvo una oportunidad razonable para conferenciar con el acusado y de ese modo ponerse en condiciones de hacer una defensa efectiva. *Pueblo* v. *Muriel*, 57 D.P.R. 914 y *Pueblo*

v. *Rodríguez*, 69 D.P.R. 980. Citando del caso de *Powell* v. *Alabama*, 287 U.S. 45, dijimos en *Pueblo* v. *Muriel*, supra:

" 'No basta asumir que los abogados tan súbitamente traídos al caso, creyeran que no existía defensa alguna y ejercitaran su mejor criterio al entrar a juicio sin preparación previa. Ni ellos ni la corte podian prever lo que surgiría de una rápida y minuciosa investigación de los hechos. No hubo tentativa alguna de practicar una investigación. Tampoco se dió ninguna oportunidad para ello. Los acusados fueron llevados a juicio festinadamente. El Juez Presidente Anderson, luego de expresar que no era su intención criticar duramente a los abogados que intentaron representar a los acusados en los juicios, dijo: ". . . los autos indican que la comparecencia fué más bien *pro forma* que diligente y activa. . ." Atendidas las circunstancias expuestas, resolvemos que no se les concedió a los acusados el derecho a asistencia de abogado en una forma substancial. El decidir de otra manera equivaldría a ignorar la realidad.' "

Hemos examinado los demás errores señalados por el acusado y somos de opinión que no han sido cometidos; *pero la falta de asistencia de abogado nos obliga a revocar la sentencia y a devolver el caso para un nuevo juicio.*