EVANGELISTA BERRÍOS CORTÉS, peticionario y apelante, *v.* SIXTO M. SALDAÑA, JEFE DEL PRESIDIO INSULAR, demandado y apelado.

Núm. 8424.—*Sometido:* Febrero 5, 1942. *Resuelto:* Febrero 13, 1942.

*Ernesto Mieres Calimano,* abogado del apelante; *Hon. Procurador General George A. Malcolm, R. A. Gómez, Fiscal del Tribunal Supremo* y *L. Negrón Fernández, Fiscal Auxiliar,* abogados del apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO emitió la opinión del tribunal.

Éste es un recurso de apelación interpuesto por el prisionero Evangelista Berríos Cortés contra la sentencia de la

Corte de Distrito de San Juan que declaró sin lugar su petición de hábeas corpus.

En su solicitud original alegó el apelante que se encontraba recluído en el presidio insular cumpliendo sentencia de la Corte de Distrito de Arecibo que lo condenó a doce años de reclusión por asesinato en segundo grado. Como motivo para reclamar su libertad adujo la falta de asistencia de abogado.

Expedido el auto y celebrada la vista la corte dictó sentencia en los siguientes términos:

"Vistos la petición y el 'return', y oídos el peticionario y el fiscal de esta corte, se declara sin lugar la petición, por aparecer de la prueba que el peticionario estuvo asistido de abogado designádole por sus propios familiares, y no haber evidencia alguna de que a dicho abogado o al peticionario se le negara término alguno para preparar una defensa adecuada.

"Véase el caso de *Macomber* v. *Hudspeth,* 115 F. (2d) 114, y los que en él se citan. En dicho caso se ha sostenido que aun en los casos en que el acusado se ha declarado culpable sin estar asistido de abogado, se presume que el mismo renunció a tal derecho, y que la prueba del mismo en un recurso de esta naturaleza debe demostrar en forma clara y convincente que no renunció inteligentemente el derecho a estar asistido de abogado.

"El caso de *El Pueblo* v. *Muriel,* 57 D.P.R. 914, 917, no es de aplicación al presente. En dicho caso el abogado fué nombrado de oficio, y se demostró que el mismo no tuvo oportunidad de preparar su defensa. En el caso de autos el abogado del acusado había sido nombrado por un hermano de éste, y dicho letrado en ningún momento anunció a la corte que no estaba preparado para defender al acusado ni solicitó término para ello."

El apelante sostiene que la anterior sentencia es contraria a la ley, a la jurisprudencia y a la prueba. La sentencia dictada por la Corte de Distrito de Arecibo en marzo 8, 1937, lee así:

"Llamado este caso a vista en el día de hoy, compareció el Pueblo de Puerto Rico representado por su fiscal y el acusado Evangelista Berríos asistido de su abogado Lic. Angel Muñoz Igartúa.

"Constituído el jurado en debida forma, se procedió a la lectura de la acusación, haciendo el acusado alegación de culpable del delito de asesinato en segundo grado, a lo cual se allanó el fiscal. La corte, oída dicha alegación y visto el allanamiento del ministerio público, instruyó al jurado para que rindiera veredicto de acuerdo con dicha alegación.

"Rendido el mismo la corte declara a dicho Evangelista Berríos convicto del delito de asesinato en segundo grado, y a petición de éste, quien renunció al término legal para dictarle sentencia, y por el contrario solicitado que la misma le sea dictada en este acto, la corte procede a dictarla y al efecto condena a dicho Evangelista Berríos a sufrir la pena de doce años de presidio, con trabajos forzados, que cumplirá en el Presidio Insular de Puerto Rico.

"Y se ordena que dicho reo sea inmediatamente conducido a dicho Presidio Insular de Puerto Rico y allí sea entregado con copia certificada de esta sentencia, al jefe de dicha institución para que en la misma sea recluído y confinado hasta que la misma se haya cumplido."

La evidencia aportada por el peticionario en el acto de la vista del auto consistió en la declaración del abogado Angel Muñoz Igartúa y en su propia declaración.

La primera, copiada a la letra, dice:

"P. Con la venia del tribunal, ¿su nombre?—R. Angel Muñoz Igartúa.—P. ¿A qué se dedica?—R. Abogado.—P. ¿Además, qué otro cargo ocupa?—R. Actualmente alcalde de Manatí.—P. ¿Usted conoce al peticionario, Evangelista Berríos Cortés?—R. Lo conozco. —P. ¿Cuándo fué que usted lo conoció?—R. Pues lo conocí el día de la vista del caso en la Corte de Distrito de Arecibo.—P. ¿Esa mañana en que usted intervino en el caso fué que usted vió el acusado, o cuándo fué?—R. Yo estaba en Manatí, en mi oficina, esa mañana, en mi oficina de abogado y llegó un hermano de él, a quien yo conocía antes, y traía una recomendación de un amigo de Ciales para que yo fuera a Arecibo a declarar culpable al hermano. Yo fuí con él y entonces me señaló quién era su hermano acusado. Lo llamé y le dije a lo que yo iba. El hermano y el acusado me dijeron que ya estaba el asunto arreglado, que iban a imponerle doce años de presidio. La causa original era por asesinato en primer grado, y que se iba a allanar el fiscal a la rebaja en la calificación del delito a asesinato en segundo grado. Y cuando el caso se llamó, yo hice la moción ante el juez, que el acusado aceptaba,

por mi conducto, la acusación si se rebajaba a asesinato en segundo grado, y le impusieron doce años de presidio.—P. ¿Usted no conocía las circunstancias ni los hechos del caso?—R. Absolutamente.—P. ¿No tenía...?—R. Unicamente lo que me dijo el hermano del acusado.—P. ¿Lo que le dijo ese mismo día por la mañana?—R. Lo que me dijo ese mismo día, por la mañana.—P. ¿Y dice el testigo que tampoco conocía al acusado?—R. No lo conocía.—P. ¿Lo vió allí en la corte?—R. La primera vez que lo había visto fué ese día.—P. ¿Y el compañero lo que hizo fué asistirlo en cuanto a su declaración de culpabilidad?—R. Lo que le hice fué un favor de amigo y de cierto aspecto político a la familia, y al amigo de Ciales que me lo recomendó.—P. ¿El compañero vió la acusación en el caso?—R. Bueno la oí leer al Secretario de la Corte, cuando se le leyó ese día.—Sr. Mieres Calimano: Pues nada más.—La corte: P. ¿Al declarar culpable a este peticionario, advirtió a la corte que no había examinado el caso ni tenía conocimiento de los hechos?—R. Yo no advertí nada.—P. ¿Sino sencillamente se limitó a declararlo culpable?—R. Yo le dije, al llamar al acusado, '¿Usted está conforme con que yo lo declare culpable de asesinato en segundo grado?' Y ante la conformidad de él...—P. ¿De manera que tampoco pidió término a la corte para preparar una defensa adecuada?—R. No señor.—P. ¿Ni el acusado lo pidió?—R. Yo no la pedí, ni el acusado me pidió a mí que lo solicitara tampoco.''

Y la segunda, también copiada a la letra, es como sigue:

''P. ¿Cómo usted se llama?—R. Evangelista Berríos Cortés.—P. ¿Usted es el peticionario en este caso?—R. Sí, señor.—P. ¿Dónde se halla recluído?—R. En la Penitenciaría.—P. ¿A virtud de una sentencia de qué corte?—R. De la Corte de Distrito de Arecibo.—P. Dígame, testigo, ¿el día que usted estuvo, cuando llegó el compañero Lic. Muñoz Igartúa a la corte, ya usted había hablado con alguien respecto al caso?—R. Yo había hecho un arreglo con el fiscal de coger doce años.—P. ¿El día que lo llevaron a la corte a leerle la acusación, usted estuvo representado por abogado?—R. No señor.—P. ¿La corte no le nombró abogado en esa ocasión a usted? —R. No señor.—P. ¿Durante todo el tiempo que transcurrió desde que usted cayó preso hasta la vista del juicio, usted estuvo bajo fianza en algún momento?—R. No señor, estaba preso.—P. ¿No fué visitado por ningún abogado?—R. Tampoco.—P. ¿De manera que cuando llegó el Lic. Muñoz Igartúa, ya usted había hablado con el fiscal?—R. Había hecho un arreglo con el fiscal de coger doce años.—P. ¿Hasta qué grado estuvo usted en la escuela?—R. Hasta

sexto.—P. ¿Usted sabe lo que es una acusación?—R. No señor.—
P. ¿Sabe los requisitos de una acusación?—R. No señor.—Sr. Mieres
Calimano: Nada más.—La corte: Fiscal.—Sr. Fiscal: Nada.—La
corte: P. Dígame, Evangelista, ¿cuánto tiempo transcurrió desde
que se le leyó la acusación hasta que hizo el arreglo con el fiscal de
doce años?—R. Bueno, el fiscal fué a la cárcel.—P. ¿A los cuántos
días de habérsele leído la acusación fué que el fiscal fué a la cárcel?
—R. Como a los ocho días.—P. ¿El fiscal fué a la cárcel, y qué
pasó cuando el fiscal fué a la cárcel?—R. Que llamó los que se
fueran a declarar culpable, y entonces pues yo le dije cuánto me
daba.—P. ¿Usted se iba a declarar culpable según lo que le dieran?
—R. Sí, porque no tenía medios para poner un abogado e iba a
hacer un arreglo con él, como hicieron los demás, y entonces pues
me ofreció doce años, y yo le dije, 'bueno, los cojo', y él se compro-
metió a bajarme de asesinato en primer grado a segundo.—P. ¿Y se
le rebajó?—Sí, señor.—P. ¿Cuando usted hizo esa confesión de
culpabilidad estaba asistido de su abogado, Lic. Muñoz Igartúa?—No,
señor.—P. ¿No estaba él allí con usted?—R. ¿Cuando fuí a la
acusación?—P. Cuando fué a declararse culpable.—R. Sí, señor.—
P. ¿Y ese abogado se lo había conseguido su hermano?—R. Sí.—
Sr. Mieres Calimano: P. ¿Entonces, por qué se declaró culpable
de ese delito?—R. Me declaré culpable porque había hecho el arreglo
con el fiscal de coger doce años.—P. ¿No porque fuera culpable?—
R. Bueno, yo hablé al fiscal que yo me declaraba culpable siempre
que me bajara de asesinato en primer grado a segundo.—P. ¿En
esa acusación usted era el único acusado en ella, o había otro acusado
también, por el mismo delito, por los mismos hechos?—R. No, nin-
guno.—P. ¿Y entonces Juan Medina?—R. Juan Medina estaba
acusado del mismo delito mío, pero ese día no fué.—P. ¿En esa
misma acusación Juan Medina, conjuntamente con usted, estaba
acusado de los mismos hechos?—R. Sí, señor.''

█ No hace aún un mes, el 19 de enero de 1942, la Corte
Suprema de los Estados Unidos, en el caso de *Glasser* v.
*United States,* volvió a poner de relieve el deber en que las
cortes se encuentran de hacer que sea una realidad la garan-
tía constitucional que tiene toda persona acusada de un delito
de estar representada por abogado. Uno de los párrafos de
la opinión de la corte emitida por el Juez Sr. Murphy dice:

''Sobre el juez sentenciador recae el deber de velar por que el
juicio se conduzca con consideración para los derechos esenciales

del acusado. Hablando sobre la obligación que tiene la corte sentenciadora de hacer valer el derecho a juicio por jurado que tiene un acusado, el Juez Asociado Sr. Sutherland dijo que tal deber 'no debe cumplirse como cuestión de rutina si que con sana discreción, con miras a evitar indebidas o irrazonables desviaciones de esa clase de juicio o de cualquiera de sus elementos esenciales y con precaución que debe aumentar a medida que los delitos de que se trate aumenten en gravedad.' *Patton* v. *United States,* 281 U. S. 276, 312–313. La corte sentenciadora debe proteger el derecho de un acusado a estar representado por abogado. 'Este deber protector impone al juez que preside el juicio la seria y pesada responsabilidad de determinar si el acusado ha hecho una renuncia inteligente y competente. Aun cuando un acusado puede renunciar su derecho a tener abogado, el hecho de si ha habido una renuncia formal debe ser determinado claramente por la corte sentenciadora, y lo correcto sería que esa determinación se hiciera constar en el récord.' *Johnson* v. *Zerbst,* 304 U. S. 458, 465.''

Y entonces, refiriéndose al caso concreto que tenía bajo su consideración, concluye:

''No revela tal consideración por parte de la corte sentenciadora para los derechos fundamentales de Glasser el récord que tenemos ante nos.''

Inspirados en los mismos principios, llegamos a la misma conclusión en el caso que envuelve esta apelación, caso que pone de manifiesto no sólo la falta de ayuda legal al acusado sino una práctica censurable que no debe repetirse.

En su petición de hábeas corpus indicó y en la vista del auto, bajo juramento y de modo terminante, el peticionario declaró que al leérsele la acusación no estuvo representado por abogado, que la corte no le nombró abogado en esa ocasión.

Su declaración no fué objetada ni contradicha. Se trataba de una acusación de asesinato y no ya la Constitución y la Ley Orgánica quedaron incumplidas si que la misma ley procesal penal que expresamente—artículo 141, Código de Enjuiciamiento Criminal, ed. 1935, pág. 105, Ley referente al nombramiento de defensor en casos criminales de marzo

5, 1905, pág. 210—imponía al juez el deber ineludible de velar por que el acusado tuviera la ayuda legal necesaria en ese acto.

Repetida es la jurisprudencia sobre el efecto de dejar incumplido tal deber. Bastará que citemos del resumen de *Ex parte Resto*, 55 D.P.R. 725, lo que sigue:

"Un acusado de delito grave tiene derecho a estar asistido y aconsejado por un abogado en el acto de la lectura de la acusación y a que se le advierta de la existencia de ese derecho a su favor, antes de que se le requiera para que conteste o excepcione la acusación.

.   .   .   .   .   .   .   .   .

"Para sostener la condena de un acusado no representado por abogado en el acto del *arraingment* ni advertido de su derecho a tener asistencia legal, no basta que el acusado se haya declarado culpable. Esa declaración, sin más, no equivale a una renuncia de ese derecho. Para que, con otras circunstancias en el caso, lo sea, la corte debe ir más allá de tal declaración e indagar si fué libre y voluntariamente hecha."

Pero hay más en este caso. Consecuencia de la falta de asistencia de abogado es lo que ocurre luego en la cárcel del distrito entre el fiscal y el acusado y otros acusados más, práctica censurable que tiende más bien a obscurecer que a descubrir la verdad que es la misión de la justicia. No es posible saber a conciencia que se da a cada uno lo que es suyo, ni juzgar cada caso por sus méritos cuando se recurre a transacciones y ofertas hechas y cruzadas entre un fiscal letrado y un prisionero ignorante en el seno mismo de la prisión.

Y no sólo es censurable el hecho de una transacción semejante bajo las circunstancias que concurrieron según la declaración del peticionario, si que no podemos explicarnos cómo el fiscal pudo ofrecer una determinada pena sin contar con la conformidad del juez. Si no contaba con ella, hizo una falsa representación el fiscal, y si contaba, no fué sólo el fiscal el que faltó, si que el juez que se prestó a hacer posible tal procedimiento comprometiéndose a imponer una

pena sin el previo estudio de los méritos del caso, estudio que no pudo ser completo sin oír al acusado.

Y para que el cuadro reprochable fuera más patente, no obstante el previo acuerdo existente, a pesar de saberse que el acusado se declararía culpable, se recurre a un juicio por jurado absolutamente innecesario.

Se insiste en que habiendo concurrido finalmente el acusado representado por un abogado, la ley quedó cumplida Si se leen simplemente los hechos que recita la sentencia, parece que todo pasó en debida forma, pero descorrido el velo aparente, ¿qué se encuentra? Entonces surge con más relieve aún la ausencia de toda ayuda legal en el caso, entonces se pone de manifiesto otro deber incumplido, el del abogado que se aviene a intervenir pro fórmula, sin previa investigación de si lo que hace es justo o no, o está ameritado por las circunstancias concurrentes.

Lo que puso de manifiesto la declaración del peticionario en este caso, lo que quedó en pie a virtud de ella, es algo en verdad que no habla bien de los funcionarios que en la causa intervinieron, que debe censurarse como lo censuramos abiertamente a fin de que no pueda degenerar en una práctica que convertiría en letra muerta entre nosotros una garantía constitucional de tanta trascendencia.

Bajo cualquier aspecto que el caso se considere, bien porque el acusado no estuvo asistido en absoluto de abogado en el acto de la lectura de la acusación, ya porque tampoco lo estuvo de hecho cuando se declaró culpable, sin que se le advirtiera de su derecho ni lo renunciara inteligentemente en ocasión alguna, *procede que el recurso de apelación sea declarado con lugar y en su consecuencia que, revocando la sentencia apelada, se dicte otra decretando la inmediata libertad del prisionero por haberse pronunciado sin jurisdicción la sentencia en cumplimiento de la cual lo retiene el demandado bajo su custodia, todo sin perjuicio de los derechos que pueda tener El Pueblo de Puerto Rico para perseguir al peticionario por el crimen que se le imputa.*