TOMÁS LÓPEZ DE VICTORIA, peticionario y apelante, *v.* SIXTO M. SALDAÑA, Jefe del Presidio Insular, demandado y apelado.

Núm. 8514.—*Sometido:* Abril 14, 1942. *Resuelto:* Abril 24, 1942.

.*A. Casanova Prats,* abogado del apelante; *Hon. Procurador General George A. Malcolm, R. A. Gómez, Fiscal del Tribunal Supremo* y *Luis Negrón Fernández, Fiscal Auxiliar,* abogados del apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO emitió la opinión del tribunal.

Ésta es una apelación establecida contra sentencia de la Corte de Distrito de San Juan dictada en un procedimiento de hábeas corpus, negándose a decretar la libertad de Tomás López de Victoria, condenado por la Corte de Distrito de

Ponce como autor de un delito de asesinato a la pena de reclusión perpetua.

Se sostiene por el prisionero apelante que la Corte de Distrito de San Juan erró al resolver que la Corte de Distrito de Ponce había actuado con jurisdicción en el juicio y por consiguiente al desestimar la petición de hábeas corpus.

La falta de jurisdicción se hace consistir por el apelante en que no tuvo la debida asistencia de abogado. Claro es que si su afirmación fuera cierta tendríamos que reconocer que le asistía la razón y deberíamos revocar la sentencia apelada. *Johnson* v. *Zerbst,* 304 U.S. 458; *Ex parte Hernández Laureano,* 54 D.P.R. 416; *Powell* v. *Alabama,* 287 U.S. 45; *Pueblo* v. *Muriel,* 57 D.P.R. 914; *Berríos* v. *Saldaña,* 59 D.P.R. 903, en el que se cita el caso de *Glasser* v. *United States* decidido por la Corte Suprema Nacional en enero 19, 1942.

Para resolver en tal virtud la apelación en justicia, tendremos que investigar cuál fué la prueba sobre asistencia de abogado y aquilatarla a la luz de la razón y la jurisprudencia.

██ La sentencia cumpliendo la cual se encuentra en prisión el peticionario apelante, se dictó por la Corte de Distrito de Ponce el 28 de septiembre de 1938. El peticionario fué acusado en unión de Casimiro Berenguer, Elifaz Escobar, Santiago González, Vicente Morciglio, Leocadio López, Juan Pietri, Guillermo Larrogaiti y Prudencio Segarra de un delito de asesinato intentado contra el Gobernador de Puerto Rico Blanton Winship y perpetrado, el 25 de julio de 1938, en la persona de Luis A. Irizarry, Coronel de la Guardia Nacional, que cerca del Gobernador se encontraba, revistando una parada que se celebraba en Ponce en dicho día, en conmemoración del cuadragésimo aniversario de la entrada del ejército de los Estados Unidos de América en Puerto Rico.

Pidió el acusado y le fué concedido juicio por separado, y celebrado el juicio, el jurado rindió veredicto declarándolo culpable de asesinato en primer grado. La corte le impuso

la pena de reclusión perpetua. Apeló para ante este Tribunal y desistió del recurso, quedando la sentencia firme.

Así las cosas, en enero de este año archivó el prisionero su petición de hábeas corpus en la Corte de Distrito de San Juan. Expedido el auto, fué llevado a la corte el cuerpo del peticionario por su guardián y se practicó la investigación de ley. En febrero 9, 1942, la corte dictó la sentencia recurrida, negándose a decretar la libertad del prisionero. La sentencia se basa en una extensa relación del caso y opinión que forma parte de los autos y que contiene la conclusión que sigue:

"Los hechos probados en el presente caso demuestran, fuera de toda duda, que el aquí peticionario estuvo en todo momento asistido de abogado, y siendo ello así, ni los derechos constitucionales del mismo, ni el artículo 141 del Código de Enjuiciamiento Criminal de Puerto Rico, ni la Ley han sido violados en forma alguna."

Se ha elevado la transcripción de la evidencia practicada en el procedimiento de hábeas corpus. Declaró el peticionario. Dijo que su causa empezó a verse en Ponce el 19 de septiembre de 1938, representándolo el abogado Toro Nazario que presentó una moción de suspensión porque no había tenido tiempo suficiente de preparar su defensa. No había hablado antes con su abogado, ni le había explicado la teoría de su defensa. Tampoco se comunicó con el otro abogado que intervino, Edelmiro Huertas. Cuando su causa se llamó ya se había celebrado el juicio contra su coacusado Elifaz Escobar. No había citado sus testigos. Le parece que la citación para juicio la recibió dos o tres días antes. El ambiente que lo rodeaba era hostil. Los abogados de Ponce no querían aceptar la defensa de estos casos. Prefería un abogado independentista. Le nombraron cinco abogados de oficio. Los acusados tuvieron entre sí un cambio de impresiones y concluyeron que debían esperar que pasara un caso a ver lo que surgía del mismo. Nunca estuvo conforme con que lo defendieran los cinco abogados que le nombraron y entonces Toro Nazario, nacionalista, asumió su representación. Después de hacerse

cargo de su defensa habló con él y su abogado le dijo que estaba dispuesto a que se sometiera el caso sin testimonio y él le dijo que había testigos. A los dos días de empezado el juicio su hermana dió a Toro Nazario una lista de sus testigos que fueron citados y declararon.

Seguidamente declaró Toro Nazario. Dijo que se hizo cargo de la defensa de López de Victoria el 19 de septiembre al comenzar el juicio sin haberla preparado con el acusado ni haber hablado con él sobre sus testigos o su teoría y que advirtió al tribunal que no estaba en condiciones de ver el caso. "Se me puso como condición que hiciera constar que estaba preparado. Como abogado yo entendía entonces que para aceptar un caso, un juez no tenía derecho a ponerme esa condición. Yo personalmente creía que yo tenía razón, pero en aquellos momentos, una vez dictado el criterio del juez, la misión del abogado no era ponerse a discutir con el juez."

Luego contestó a la corte como sigue:

"P. ¿Usted había estudiado las cuestiones de derecho en este caso de López de Victoria antes de entrar a juicio?—R. No, no las había estudiado.—La Corte: P. ¿Y después de entrar a juicio, las estudió? —R. Mi contestación sería sí, entendiéndose que hay que tomar en consideración la precipitación con que fué el caso. De modo que muchas cosas, aunque fueron estudiadas, la verdad es que pudieron haber sido mejor estudiadas si hubiera habido más tiempo y más oportunidad, sobre todo esta precipitación hay que interpretarla a la luz de que yo estaba lejos de mi bufete, lejos de mis notas, lejos de mis libros y lejos de mis medios de comuniacción profesional ordinarios . . . "

Ambas declaraciones, la del prisionero y su abogado, son muy extensas y difíciles de resumir. Sólo hemos consignado lo que nos ha parecido más saliente para la mejor comprensión de las mismas.

Seguidamente el prisionero introdujo parte de la transcripción de evidencia de la causa criminal núm. 7419, por asesinato, de la Corte de Distrito de Ponce, páginas 2 a 13. El fiscal presentó las páginas 38 y 515 de la misma transcripción y el caso quedó sometido.

De esa última evidencia resulta que al llamarse la causa de asesinato para juicio compareció el acusado representado por sus abogados de oficio y uno de ellos, Augustín Font, se refirió a cierta moción que habían presentado después de la celebración del juicio de Elifaz Escobar, pidiendo a la corte que los relevara de seguir representando a los otros acusados, y dijo que al no acceder la corte, acatando su orden, se dedicaron los abogados con todo empeño a la defensa de López de Victoria y estando en ello los visitó su compañero Toro Nazario notificándoles su decisión de tomar a su cargo la representación ''de este acusado, y de los demás acusados,'' habiendo convenido tras un cambio de impresiones en que se harían esas manifestaciones en corte y Toro Nazario asumiría la representación del acusado. Agregó que desde el caso de Elifaz Escobar, Toro Nazario mostró interés en intervenir, pero los abogados de oficio no lo permitieron, tomando luego la anunciada resolución después de haber conferenciado con el acusado Berenguer y con el propio López de Victoria.

Entonces Toro Nazario se expresó así: ''Deseamos manifestar que lo que ha dicho el compañero Agustín Font es una versión fiel y exacta de todo lo que se ha acordado. Que todo es completamente cierto de acuerdo con lo que se ha estipulado.''

Intervino el fiscal. Hiciéronse varias manifestaciones y finalmente ocurrió lo que sigue:

''Juez: Queda terminado y la corte le va a hacer una pregunta al señor Toro Nazario. ¿Está usted preparado para entrar a la vista de este caso?—Toro Nazario: Esa pregunta la contestaría de otra manera ahora.—Juez: Es una consecuencia de lo anterior. Hice bien claro que no resolvería la moción de retirarse los abogados, y no la resuelvo sin tener la seguridad de que el señor Toro Nazario iba a entrar a la vista de este caso. Lo hice bien claro, pues tengo muy buena memoria.

''Toro Nazario: Esa advertencia me impide contestar la pregunta y tomamos respetuosamente excepción a ella para los efectos del récord.—Juez: Tenemos que salir de esto. No voy a resolver la cuestión hasta que tenga la seguridad de que el abogado me conteste

en términos que no sean ambiguos. La corte le exige una contestación clára, porque no vamos a estar en un juego de balanceo.—Pierluisi: Deseamos aclarar, para sostener la posición de Vuestro Honor, que al allanarnos a la petición del compañero Font, lo hicimos en el entendido de que no se va a pretender suspender el juicio. Tendríamos que retirar nuestro allanamiento, si esto envuelve una táctica del compañero Toro Nazario de suspender el caso, si se quiere aprovechar de la oportunidad para hacer una moción de suspensión que perjudicaría los derechos de El Pueblo de Puerto Rico . . .

"Toro Nazario: En esas condiciones, señor Juez, contestamos que estamos preparados para entrar a juicio. Pero este abogado quiere hacer constar en el expediente, que una de las funciones de un abogado después de aceptar el cargo de abogado de un acusado, es que tiene pleno derecho a pedir una suspensión. De modo que si para los efectos del expediente pidiera la suspensión del caso, no se entienda que está en conflicto . . .—Juez: Cada cual alegue su derecho. El abogado presenta la moción, el fiscal se opone, la corte la resuelve y el abogado tiene derecho a tomar excepción.—Toro Nazario: Estamos preparados para entrar a juicio.

* &ast; &ast; &ast; &ast; &ast; &ast;

"Juez: ¿Se contesta la pregunta? ¿El señor Toro Nazario será de ahora en adelante el representante, abogado exclusivo del acusado en este caso?—Toro Nazario: Sí señor, en todos los casos, excepto los que ya tienen abogado.—Font: Y excepto en el de Elifaz Escobar en el cual nosotros ostentamos la representación del acusado.—Juez: Aclaradas todas esas circunstancias, la corte declara con lugar la moción de los cinco abogados que intervinieron en el caso contra Elifaz Escobar, entendiéndose que ellos continúan tramitando el caso de Elifaz Escobar hasta su terminación en la Corte Suprema . . .

* &ast; &ast; &ast; &ast; &ast; &ast;

"Juez: Entonces el señor Toro Nazario permanece como abogado del acusado. La corte hace una pregunta. ¿Las partes están preparadas para entrar a la vista de este caso?—Rodríguez Serra: Estamos listos.—Toro Nazario: Reproducimos la misma alegación de la anterior moción.—Juez: Si tiene alguna moción, hágala.—Toro Nazario: No estando listos, y para ganar tiempo, presentamos respetuosamente una moción de suspensión, alegando que el acusado no ha tenido tiempo razonable para preparar su defensa.—Rodríguez Serra: Con nuestra oposición, por los siguientes fundamentos: Ya el compañero Toro Nazario anunció desde hace varios días, a través de su telegrama, que asumiría la defensa del acusado, y tenía conocimiento de que el caso estaba señalado para hoy, después de citar a todos los testigos,

a los jurados y estar listos los fiscales.—Pierluisi: El mismo abogado anunció que estaba preparado para entrar a juicio.—Juez: La defensa.—Toro Nazario: Sometida.—Juez: La corte declara sin lugar la moción de suspensión y ordena que se entre a la vista de este caso.''

Las páginas de la transcripción ofrecidas en evidencia por el fiscal, comprueban, la 38, que el abogado Huertas Zayas actuó también como abogado en el juicio examinando a los jurados, y la 515 que Toro Nazario introdujo la evidencia de su defendido, así:

"Toro Nazario: En esas condiciones nosotros vamos a ofrecer esa prueba a ustedes, y esperamos que merecerá el crédito de ustedes y traerán un veredicto absolutorio para el acusado.—Juez: Entonces, prueba de la defensa. Que los testigos presten juramento.—Toro Nazario: Los testigos son: Lucila Ralat, Pura López, Nicanora Sotomayor, Juan Alfonso Santiago, Josefa Ríos, Elifaz Escobar y Juan Pietri. Anunciamos que estamos tratando de localizar a otro testigo que no ha aparecido, pero para los efectos de la notificación a los fiscales, tan pronto como podamos localizar a este testigo, lo notificaremos inmediatamente.—(El Secretario le toma juramento a los testigos.)—Juez:. Se seguirá la regla de un solo abogado y un solo fiscal.''

Habiendo en consideración todo lo expuesto, nos parece que estuvo justificada la corte sentenciadora al concluir que el prisionero tuvo en el juicio la debida asistencia de abogado.

Como sabemos, el peticionario fué acusado conjuntamente con otras personas de un delito de asesinato y la corte de distrito les nombró cinco abogados de oficio. Los propios acusados conferenciaron entre sí y acordaron pedir juicios por separado a fin de observar lo que ocurriera en el primer caso. Fué Elifaz Escobar el primero, y de cómo cumplieron su deber sus abogados de oficio, habla la opinión de esta corte emitida para basar la sentencia que declaró no haber lugar al recurso establecido contra la de la Corte de Distrito de Ponce. *Pueblo* v. *Escobar,* 55 D.P.R. 505.

El abogado Toro Nazario, por aquel entonces vicepresidente del Partido Nacionalista, trató de intervenir en el juicio de Escobar. No lo permitieron los abogados nombrados por

la corte. Renovó su actitud cuando Escobar fué condenado, en cuanto a los otros acusados, especialmente en cuanto a López de Victoria, y entonces los abogados de oficio se avinieron a retirarse siempre que Toro Nazario se hiciera cargo de la representación de López de Victoria en el día del juicio que estaba ya señalado, todo ello con la conformidad del acusado que quería ser defendido por un abogado de su partido, esto es, nacionalista

Bajo esas circunstancias no pueden impresionar favorablemente la conciencia judicial las manifestaciones de Toro Nazario en el sentido de su falta de preparación. En primer lugar admitió que lo estaba y en segundo lugar que lo estuviera era lo lógico dados su condición de vicepresidente del Partido Nacionalista, su interés en la defensa mostrado desde el primer juicio, su insistencia en el segundo y su manera de desenvolverse en el mismo, presentando y practicando la evidencia con que contaba su defendido.

Además, uno de los abogados de oficio, de simpatías nacionalistas, según surge de los autos, Edelmiro Huertas, continuó a su lado y le prestó su ayuda principalmente en la constitución del jurado.

Esas circunstancias son bien distintas de las que llevaron a la Corte Suprema de los Estados Unidos en el caso de *Powell,* supra, y a esta Corte Suprema de Puerto Rico en los casos de *Muriel* y *Berríos,* supra, a concluir que no obstante haber contado los acusados con abogados, en realidad no los tuvieron y fueron juzgados sin la asistencia legal que la ley les garantiza, habiéndose dictado por tanto sin jurisdicción las sentencias que contra ellos fueron pronunciadas.

Este caso cae más bien dentro de la regla establecida por la Corte Suprema Federal en el de *Avery* v. *Alabama,* 308 U.S. 444, en el que el peticionario fué convicto de asesinato en la Corte de Circuito de Bibb County, Alabama, y sentenciado a muerte, confirmando la sentencia la Corte Suprema del estado.

El caso llegó en *certiorari* a la Corte Suprema de los Estados Unidos y ésta, en opinión emitida por su Juez Sr. Black, dijo:

" . . . La cuestión única presentada consiste en determinar si, en violación de la Enmienda Décimocuarta, 'se privó al peticionario de su derecho a estar representado por abogado, con los incidentes usuales de consulta y oportunidad de prepararse para el juicio,' porque después de habérsele nombrado letrados competentes en debida forma, la moción radicada por éstos para posponer el juicio fué denegada."

Expuso luego los hechos según aparecían del récord, a saber, que el peticionario había sido arrestado poco antes de marzo 21, 1938, para responder de un crimen cometido en 1932; que en la indicada fecha—marzo 21, 1938—se le leyó la acusación en un término regular de la corte, nombrándosele para asistirlo dos abogados, haciéndose alegaciones de no culpable y no culpable por causa de demencia, y que la corte señaló el juicio para marzo 23, esto es, para dentro de dos días, celebrándose en efecto el 24 en cuya fecha los abogados pidieron la suspensión bajo la base de que no habían tenido tiempo ni oportunidad suficientes desde su nombramiento para investigar y preparar su defensa, acompañándose *affidavits* a la moción.

Continuando en el estudio del récord encontró que eso no obstante los abogados habían actuado en el juicio celosa e inteligentemente y que la sentencia condenatoria dictada había sido apelada y confirmada, expresándose entonces, textualmente, como sigue:

"Bajo las peculiares circunstancias que aparecen de este récord no creemos que se haya privado al peticionario del beneficio de estar representado por abogado que le garantiza la Enmienda Décimocuarta. Los letrados nombrados para su defensa, conforme lo reconoció la Corte Suprema de Alabama, han cumplido con 'la totalidad de su deber hábil e inteligentemente.' No sólo prepararon ellos la defensa del peticionario ante la corte sentenciadora si que, junto con los letrados más tarde empleados, apelaron para ante la corte suprema del estado y luego trajeron la controversia ante nos solicitando

su revisión. Su nombramiento y la representación ostentada bajo el mismo no fueron meras formalidades si que los abogados del peticionario han—como era su más solemne deber—intervenido activamente en cada etapa del proceso hasta su definitivo fallo. El peticionario ha tenido en consecuencia la asistencia de diligentes y celosos letrados desde el momento de la lectura de la acusación hasta el informe final ante esta corte."

Antes había dicho:

"Toda vez que la Constitución no especifica en sitio alguno que deba transcurrir determinado lapso de tiempo entre el nombramiento de letrado que se requiere y el juicio, el hecho, por sí sólo, de que se haya denegado una moción de suspensión, no constituye una privación del derecho constitucional a estar representado por abogado."

Siendo la conclusión de la corte la siguiente:

"Atendidas las circunstancias que concurren en este caso no podemos decir que el juez sentenciador, quien terminó un juicio conducido en forma justa salvaguardando cuidadosamente los derechos del peticionario por medio de una explícita y leal instrucción al jurado, privara al peticionario de su derecho constitucional a estar representado por abogado. Habiendo la Corte Suprema de Alabama concluído que se concedió ese derecho al peticionario, su sentencia es por la presente confirmada." *Avery* v. *Alabama*, supra.

Si terminado el estudio del caso de *Avery* volvemos a fijarnos en el de López de Victoria, encontraremos que sus detalles revelan claramente que el peticionario no solamente tuvo el auxilio legal necesario si que el que él mismo escogiera. La corte de distrito le nombró para asistirlo en su defensa desde el primer momento un grupo de abogados competentes y aceptó luego el cambio deseado por él mismo, y si se mantuvo firme en la no suspensión del juicio, todo demuestra que ejercitó correctamente su discreción. Garantía de defensa no quiere decir que se acceda a cualquier petición del acusado aunque se tenga el convencimiento de que se presenta para dilatar indebidamente la administración de la justicia.

*Debe declararse sin lugar el recurso y confirmarse la sentencia apelada.*